**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| TARA SAULIC, | ) | |
| | ) | CASE NO.  5:12CV2753 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff Tara Saulic ("Saulic ") challenges the final decision of the Commissioner of

Social Security, Carolyn W. Colvin[1] ("Commissioner"), denying her claim for a Period of

Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income

("SSI") under Title(s) II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423,

1381 *et seq*.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of

the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

---

[1]  Defendant indicates that Carolyn W. Colvin became the Acting Commissioner of Social
Security on February 14, 2013; and, that, pursuant to Fed. R. Civ. P. 25(d), Ms. Colvin should
be substituted for Michael J. Astrue as the defendant in this suit.  (Doc. No. 16 at 1.)  Plaintiff
does not object.

## I. Procedural History

On October 21, 2009, Saulic filed applications for POD, DIB, and SSI, alleging a disability onset date of July 15, 2009 and claiming she was disabled due to kidney disease. (Tr. 117.) Her application was denied both initially and upon reconsideration. Saulic timely requested an administrative hearing.

On April 18, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Saulic, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 27-63.) On May 6, 2011, the ALJ found Saulic was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 14 - 22.) The ALJ's decision became final when the Appeals Council denied further review. (Tr. 1- 4.)

## II. Evidence

### Personal and Vocational Evidence

Age twenty-three (23) at the time of her administrative hearing, Saulic is a "younger" person under social security regulations. *See* 20 C.F.R. § 404.1563(c) & 416.963(c). She has a tenth grade education. (Tr. 32-33.)

### Medical Evidence

The medical record reflects Saulic has undergone numerous outpatient surgeries either for the removal of kidney stones or the removal of resultant temporary stents. Between January 2008 and September 2010, Saulic underwent at least ten such surgeries. (Tr. 334-336, 330-331, 286-287, 281-282, 157-158, 377-378, 665-666, 656-657, 645-646, 541-542.) The record also indicates Saulic visited the emergency room ("ER") on multiple occasions for abdominal, flank, and/or back pain relating to her kidney stones. Specifically, Saulic visited the ER on at least ten occasions during this same time period. (Tr. 345-346, 303-304, 313-314, 264-265, 250-251,

2

211-212, 194-195, 233-234, 482-483, 454-455, 385-386, 559-560.)  During these ER visits, she

underwent numerous CT scans which often indicated the presence of kidney stones, and was

prescribed pain medication.  (Tr. 313-314, 264-265, 268, 211-212, 680-681, 454-455, 571, 511-

512.)

At the time of the hearing, Joseph Dankoff, M.D., had treated Saulic's kidney stones for

four years and performed most (if not all) of the surgeries noted above.  (Tr. 42, 334-336, 330-

331, 281-282, 157-158, 665-666, 656-657, 645-646, 541-542.)  On  January 31, 2011, Dr.

Dankoff completed an assessment of Saulic's work capacity.  (Tr. 690-691.)  Therein, he opined

that, when Saulic is having a kidney stone attack, she is limited in the following respects: (1) she

can lift and carry only 5 lbs.; (2) she can stand and/or walk for a total of two hours in an eight

hour workday; (3) she can sit for a total of two hours in an eight hour work day; (4) she can only

occasionally climb, balance, stoop, crouch, kneel, or crawl; (5) her ability to reach, handle, feel,

and push/pull are affected; and, (6) her ability to work with moving machinery is affected. (Tr.

690-691.)

Two months later, on March 28, 2011, Dr. Dankoff completed a Kidney Problem

Medical Source Statement.  (Tr. 699-700.)  In this assessment, he noted a diagnosis of recurrent

cystine urinary calculi, citing "multiple episodes of stones obstructing the kidneys."  (Tr. 699.)

He opined that, when Saulic is having pain, she is unable to stand/walk during an eight hour

workday.  (Tr. 699.)  However, he indicated that her ability to sit is not affected.  (Tr. 699-700.)

He also opined that, when Saulic was having kidney stone pain, she would need to take

intermittent unscheduled breaks.  (Tr. 700.)  Finally, Dr. Dankoff opined that Saulic would likely

be absent from work more than four days per month as a result of her impairments or treatment.

(Tr. 700.)  Although asked to do so, Dr. Dankoff did not indicate the percentage of a typical

3

workday during which Saulic would likely be "off task," stating only that she would be off task "when having pain."  (Tr. 700.)

### State Agency Physicians

On January 29, 2010, state agency physician W. Jerry McCloud, M.D., noted a diagnosis of ureterolithiasis, nonobstructin bilateral renal calculi, and mild to moderate hydronephrosis. (Tr. 379.)  Citing medical records from September through November 2009, he opined that Saulic's symptoms are "controlled with pain meds" and her "impairment is not severe." (Tr. 379.)

On May 19, 2010, stage agency physician David Brock, D.O., opined that Saulic "has no limitations unless she is passing a kidney stone at that time."  (Tr. 380.)  He noted the medical record documented a diagnosis of recurrent nephrolithiasis but that this condition "does not appear to cause more than a mild limitation of claimant's functioning."  (Tr. 380.)  He found Saulic's allegations of constant pain were not supported by the medical record and, further, that her statements are only "partially credible."  (Tr. 380.)  He concluded that "the medical opinion continues to be no severe impairment."  (Tr. 380.)

### Hearing Testimony

At the April 18, 2011 hearing, Saulic testified as follows:

- She completed tenth grade, but then stopped going to school because of the pain caused by her kidney stones.  (Tr. 32 - 33.)  She has not received her GED.  (Tr. 33.)

- She first had kidney stones when she was in the fifth grade.  Three years later, she was taken to the hospital for her kidney stones, underwent a CT scan, and received pain medication.  Her first surgery occurred when she was 18 years old. Her kidney stone attacks became more severe when she was 20 years old.  (Tr. 38-40.)

- She passes kidney stones every day and, in fact, was passing one during the

4

hearing.  (Tr. 30-31, 33.)  The severity of her kidney stone attacks depends on the size of the stone.  (Tr. 33-34.)  She passes stones at home if she can because she does not like going to the hospital.  She does not always call her doctor when she passes a stone.  (Tr. 31.)

- She experiences pain in her lower back, side, and lower stomach as a result of her kidney stones.  She described the pain as "throbbing, achy, [and] stabbing."  (Tr. 36.)  It causes her to feel exhausted, dizzy, and nauseous.  (Tr. 36-37.)  She also has difficulty sleeping.  (Tr. 42.)

- On a good day, she can get up and go to the bathroom.  On a bad day, she "just can't do anything."  She has bad days "a lot," i.e. 8 to 10 times per month.  (Tr. 34.) A bad attack will last "weeks, sometimes days . . . it depends."  (Tr. 34.)

- She also suffers from depression.  She first received treatment the month before the hearing.  (Tr. 44.)

- She takes Vicodin, Phenergan, Zoloft, and Urocit-K.  (Tr. 42.)  Her medications give her stomach pain and interrupt her sleep. (Tr. 42.)

- She lives at home with her mother.  She cannot do chores around the house because it is too difficult for her to go up and down stairs.  Her mother cooks, shops, and does the laundry for her.  (Tr. 37.)  When she is in pain, she cannot lift anything heavier than a gallon of milk.  (Tr. 56.)  Although she has a driver's license, she does not drive because she is "always on pain medication."  (Tr. 37.)

- She worked part-time at a beauty supply store from 2005 to 2009.  (Tr. 45.)  Her responsibilities included cashiering, putting stock on the shelves, and labeling merchandise.  (Tr. 46.)  She never worked more than 14 hours/week because she "couldn't handle it."  (Tr. 51-52.)  She quit because she "missed a lot of work from being in and out of the hospital and having surgeries, and it was just too much" for her.  (Tr. 53.)  She has not worked since July 2009.  (Tr. 47.)

The ALJ determined Saulic's past work experience did not constitute "past relevant work" for social security purposes.  (Tr. 59-60.)  He posed the following hypothetical to the VE:

For the first hypothetical, please consider a hypothetical individual of the claimant's age, education, work experience and the residual functional capacity to perform work at all exertional levels that takes into account non-exertional limitations.  It will allow the performance of simple tasks in a setting with superficial interactions with others and without fast-paced production quotas.

(Tr. 49.)  The VE testified that such a person could perform unskilled work as a dining room

5

attendant, cook helper, and cleaner.  (Tr. 49.)

> The ALJ later posed a second hypothetical, as follows:

> For the second hypothetical, would you consider a hypothetical individual of claimant's age, education, work experience, and the residual functional capacity to perform work at all exertional levels that does not involve hazards such as machinery, heights, or commercial driving and takes into account being off task 10 percent of the time due to pain as a result of kidney stone passage.

(Tr. 59.)  The VE testified that such a person could perform the same three jobs previously identified.  (Tr. 60.)  The ALJ then asked the VE to consider "all of the factors enumerated in hypothetical number one and hypothetical number two except instead of being off task for 10 percent of the time, this individual was off task 25 percent of the time due to pain as a result of kidney stone passage."  (Tr. 61.)  The VE testified that there would be "an issue of maintainability, but it would be so severe that there would be no jobs available."  (Tr. 61.)  On further questioning, the VE indicated that being off-task twenty percent of the time was the line that precluded employment.  (Tr. 62.)

In addition, Saulic's counsel asked the VE whether there would jobs available for an individual who could only lift or carry a maximum of 5 pounds, could only stand or walk for a total of two hours in an eight hour workday, and could only sit for a total of two hours in an eight hour workday.  (Tr. 54.)  The VE testified that there would be no jobs for such a hypothetical individual.  (Tr. 54.)  Saulic's counsel then asked whether there would be jobs available for an individual that missed four or more days of work per month.  (Tr. 54.)  The VE testified that "there'd be jobs, but I think the maintainability would be so severe that there'd be no jobs available." (Tr. 54.)

6

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Saulic was insured on her alleged disability onset date, July 15, 2009, and remained insured through June 30, 2010.  (Tr. 14.)  Therefore, in order to be entitled to POD and DIB, Saulic must establish a continuous twelve month period of disability commencing between those dates.  Any discontinuity in the twelve month period precludes an entitlement to benefits.  *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits.  20 C.F.R. § 416.905;

---

[2]  The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe impairment."  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled.  For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

*Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

## IV.  Summary of Commissioner's Decision

The ALJ found Saulic established a medically determinable, severe impairment, due to recurrent cystine urinary calculi (i.e. recurrent kidney stones); however, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (Tr. 16-17.)  Saulic was determined to have a Residual Functional Capacity ("RFC") for a full range of work at all exertional levels but with certain non-exertional limitations.  (Tr. 17.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Saulic was not disabled.  (Tr. 21-22.)

## V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

The findings of the Commissioner are not subject to reversal merely because there exists

in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL

9

2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  Analysis

### *Treating Physician Dankoff*

Saulic argues that, although the ALJ states he accorded "considerable weight" to Dr. Dankoff's opinions, the decision implicitly rejects Dr. Dankoff's specific opinion that Saulic would likely be absent from work more than four days per month as a result of her impairments and treatment.  She maintains the ALJ failed to give good reasons for rejecting this opinion and "instead relied on his own calculations for predicting kidney stone attacks and pain."  (Doc. No. 15 at 16.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record."  *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2).  "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.)  Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the

factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[3]  If the ALJ

determines a treating source opinion is not entitled to controlling weight, "the ALJ must provide

'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear

to any subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Ruling 96-

2p, 1996 SSR LEXIS 9 at * 5).

　　　In addition, the opinion of a treating physician must be based on sufficient medical data,

and upon detailed clinical and diagnostic test evidence.  *See Harris v. Heckler*, 756 F.2d 431,

435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at

406. The ALJ is not bound by conclusory statements of a treating physician that a claimant is

disabled, but may reject such determinations when good reasons are identified for not accepting

them.  *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Secretary of Health &*

*Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir.

1984).  According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the

determination whether a claimant meets the statutory definition of disability.  This necessarily

includes a review of all the medical findings and other evidence that support a medical source's

statement that one is disabled.  "A statement by a medical source that you are 'disabled' or

'unable to work' does not mean that we will determine that you are disabled."  *Id*.  It is the

---

[3]  Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating
physician's opinion, the Commissioner should consider the length of the relationship and
frequency of examination, the nature and extent of the treatment relationship, how
well-supported the opinion is by medical signs and laboratory findings, its consistency with
the record as a whole, the treating source's specialization, the source's familiarity with the
Social Security program and understanding of its evidentiary requirements, and the extent to
which the source is familiar with other information in the case record relevant to the decision.

11

Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

Here, the ALJ accepted that Saulic's recurrent kidney stones constituted a severe impairment. (Tr. 16.) He thoroughly recounted the medical evidence regarding Saulic's numerous surgeries, emergency room visits, and treatment with pain medication. (Tr. 18.) However, he determined that "the evidence would indicate that the symptom limitations relevant to this impairment are not as severe as alleged." (Tr. 18.) He noted that Saulic's surgeries were "generally successful in relieving the symptoms" and, further, that "[i]n between exacerbations of her condition, the claimant has been repeatedly assessed as stable." (Tr. 18.) He then formulated the RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: that claimant must avoid all exposure to workplace hazards, such as dangerous moving machinery, operation of motorized vehicles, and unprotected heights; the claimant will be off task for up to ten percent of the time due to pain as a result of kidney stone passages.

(Tr. 17.) With respect to the off-task restriction, the ALJ explained that: "The allowance of off-task time of ten percent is the equivalent of twenty-four days per year. By comparison to the claimant's record of outpatient surgeries and emergency room visits culminating in a same day discharge, the claimant would have missed six days in 2008, six days in 2009 and eight days in 2010, allowing for the claimant's necessary absences with a comfortable margin of error." (Tr. 19.)

With regard to the opinion evidence, the ALJ weighed Dr. Dankoff's opinions as follows:

> As for the opinion evidence, considerable weight was accorded the opinion

12

of the claimant's treating physician, Joseph Dankoff, M.D., that the claimant, in the midst of a kidney stone attack, would not be able to sustain work at the sedentary level, would not able to stand and/or walk for up to two hours of an eight hour workday, would not be able to sit for more than two hours in an eight hour workday, would not be able, more than occasionally, to climb, balance, stoop, crouch, kneel, crawl, reach, handle, feel, push, pull, or be exposed to dangerous moving machinery, and would be off task four or more days per month. Dr. Dankoff treats the claimant and has done so for several years, and is reporting within the bounds of his specialities and certifications; **however, Dr. Dankoff has inserted a crucial qualifier into his opinion, namely, that each limitation will apply only when the claimant is in the midst of a kidney stone attack. An objective view of the record would indicate that the restriction imposed with regard to the claimant's off-task behavior would readily accommodate the claimant's symptom limitations, as discussed above.** In arriving at this evaluation, the undersigned has taken into account those factors enumerated in 20 CFR 404.1527(d) and 20 CFR 927(d), including the length of treatment, frequency of examination, nature and extent of the treating relationship, support of opinion afforded by medical evidence, consistency of opinion with the record as a whole, and specialization of the treating physician.

(Tr. 19-20) (emphasis added).[4]

The Court finds that, while the ALJ purports to have accorded "considerable weight" to Dr. Dankoff's opinions, he implicitly rejected Dr. Dankoff's specific opinion that Saulic would miss four or more days of work per month due to her impairments or treatment. The ALJ's off task restriction of 10% equates to work absences totaling twenty-four days per year or two days per month. The ALJ reasoned this was sufficient because his review of Saulic's "record of outpatient surgeries and [ER] visits culminating in same day discharge" indicated she "would have missed six days in 2008, six days in 2009 and eight days in 2010." (Tr. 19.) Therefore, he concluded a 10% off task restriction (equating to twenty-four missed days per year, or two days

---

[4] The ALJ accorded "lesser weight" to the opinions of state agency physicians McCloud and Brock that Saulic had no severe impairment. Specifically, the ALJ noted that "the presentation of claimant at the hearing and evidence received subsequent to the rendering of these opinions, together with a review of the record as a whole, justifies the findings set forth regarding the claimant's severe impairments." (Tr. 20.)

13

per month) would provide a "comfortable margin of error" that allowed for Saulic's "necessary absences." (Tr. 19.) In so finding, the ALJ necessarily rejected Dr. Dankoff's opinion that, if she were attempting to work full time, Saulic would be likely to absent from work four days or more per month "as a result of her impairments or treatment." (Tr. 700.)

Saulic argues the ALJ was required to provide "good reasons" for rejecting Dr. Dankoff's opinion regarding her anticipated work absences and, further, that the ALJ's stated reason does not constitute a "good reason" because he essentially substituted his own judgment for that of Dr. Dankoff. For the following reasons, the Court disagrees.

As set forth above, not all treating physician opinions are entitled to controlling weight and, therefore, subject to the "good reasons" requirement. Rather, an ALJ need only abscribe controlling weight to "medical opinions" from a treating source that are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the claimant's case record. SSR 96-2p, 1996 WL 374188 at * 2 (July 2, 1996). Pursuant to 20 CFR § 404.1527(a)(2), "medical opinions" are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."

By contrast, the regulations provide that "medical source opinions" on issues reserved to the Commissioner are not entitled to controlling weight, even if they are rendered by a treating physician. Specifically, 20 CFR § 404.1527(d) provides that "opinions on some issues . . . are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are

14

dispositive of a case; i.e. that would direct the determination or decision of disability." *See* 20 CFR § 404.1527(d).  An ALJ need "not give any special significance to the source of an opinion on issues reserved to the Commissioner." *See* 20 CFR § 404.1527(d)(3).

Interpreting these rules, some courts have found that treating physician opinions regarding predicted work absences do not constitute "medical opinions."  *See e.g. Arnett v. Astrue*, 2008 WL 4747209 at * 5 (W.D. Ky. Oct. 17, 2008); *Hagan v. Colvin*, 2013 WL 3350838 at * 3 (W.D. Ky. July 3, 2013).  The reasoning behind these decisions is that such opinions are essentially "tantamount to a finding of disability" in light of VE testimony that excessive work absences will preclude a hypothetical claimant from maintaining employment.[5]  For example, in *Arnett*, the claimant argued that the ALJ was required to give controlling weight to the medical opinions of his treating physician, Dr. Turbo, that he is able to sit, stand, and walk for no more than 2 hours (total for each activity) during an eight hour workday and would require absences from work of 4 or more days per month.  *Arnett*, 2008 WL 4747209 at * 5.  In that case, the VE testified that such limitations would preclude any type of full-time employment.  *Id.*  The court rejected the claimant's argument, explaining as follows:

> 20 C.F.R. § 404.1527(e) provides that an opinion from medical sources that a claimant is "unable to work" full-time or any other opinion on an issue that is "dispositive of a case, i.e., that would direct the determination or decision of disability" is not deemed to be a "medical opinion" but rather a medical source opinion on an issue "reserved to the Commissioner" and, as such, is entitled to no "special significance."  The magistrate judge concludes that the ALJ did not err in declining to give controlling weight to Dr. Turbo's per-se disabling opinions on issues "reserved to the Commissioner."  The residual

---

[5]  Vocational experts routinely testify that such absenteeism would be unacceptable to employers and result in no competitively available jobs.  *See e.g., St. Clair v. Astrue*, 2010 WL 3370568 at * 5 (N.D. Ohio Aug. 25, 2010); *Godec v. Astrue*, 2013 WL 1156506 (N.D. Ohio Jan. 30, 2013) *report and recommendation adopted* 2013 WL 1159034 (N.D. Ohio March 20, 2013); *Wilson v. Comm'r of Soc. Sec.*, 2010 WL 424969 at * 7 (N.D. Ohio Jan. 26, 2010).

15

functional capacity (RFC) determination is expressly reserved for the Commissioner, and this is especially so when the RFC assigned by a medical source is tantamount to a finding of disability. See 20 C.F.R. §§ 404.1527(e)(2) and 404.1546. Such a determination is part of the disability evaluation. 20 C.F.R. § 404.1546. **Stated somewhat differently, Dr. Turnbo did not "know," in the sense of an objective medical fact, that, if properly motivated, the plaintiff would be incapable of sustaining alternate sitting/standing for an 8–hour workday and would require absences in excess of 4 days per month. Therefore, as a threshold matter, Dr. Turnbo's opinion was not a genuine "medical opinion."** We do not reach the issue of whether such an opinion was entitled to controlling weight pursuant to 20 C.F.R. § 404.1527(d)(2) because the regulation applies only to "medical opinions."

*Arnett*, 2008 WL 4747209 at * 5 (emphasis added). The court then affirmed the decision, implictly finding the ALJ was not required to provide "good reasons" for rejecting the treating physician's opinion regarding predicted work absences.

Other courts, however, have presumed that such opinions do constitute "medical opinions" and that ALJs must, therefore, provide "good reasons" for rejecting them. *See e.g. Branson v. Astrue,* 2008 WL 111317 at * 4-5 (E.D. Tenn. Jan. 8, 2008) (vacating and remanding where ALJ failed to provide a valid basis for rejecting treating surgeon's opinion that claimant would be expected to have excessive work absences); *Horvath v. Comm'r of Soc. Sec*., 2013 WL 1914359 at ** 11-12 (E.D. Mich. April 18, 2013) (vacating and remanding where substantial evidence did not support ALJ's stated reason for giving little weight to treating psychiatrist's opinion that claimant would be likely to be absent from work more than three times per month); *Stenberg v. Comm'r of Soc. Sec*., 2008 WL 5268553 at * 1 (9th Cir. Dec. 16, 2008) (finding the ALJ properly rejected "medical opinions that Claimant would have two or more absences from work per month if employed" because decision provided "specific and legitimate reasons" supported by substantial evidence).

Under the circumstances presented herein, the Court finds Dr. Dankoff's opinion that

16

Saulic would likely be absent from work more than four days per month does not constitute a "medical opinion" entitled to controlling weight under 20 CFR § 404.1527.[6] Given the VE's testimony that there would be no jobs for an individual that missed this much work (Tr. 54), Dr. Dankoff's opinion effectively mandates a finding of disability. As such, it constitutes "an opinion on issues reserved to the Commissioner because [it is an] administrative finding[] that [is] dispositive of a case; i.e. that would direct the determination or decision of disability." *See* 20 C.F.R. § 404.1527(d). As the Social Security Administration has explained, "[g]iving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96-5p, 1996 WL 374183 at * 2 (July 2, 1996).

That being said, "opinions from any medical source on issues reserved to the Commissioner must never be ignored." *Id.* at * 3. Rather, the ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." *Id.* Therefore, while an ALJ must explain why such an opinion has not been followed, such explanation need not be as exacting as the "good reasons"

---

[6] In some circumstances, the Court recognizes that an opinion regarding expected work absences may be more akin to a medical opinion that an opinion as to a claimant's employability. Where, due to the normal course of treatment, a patient has actually missed or is scheduled to miss a certain number of days, the physician's opinion is not the product of conjecture and is, rather, a *bona fide* medical opinion. However, Saulic has not directed this Court's attention to any record evidence indicating that this is such a case.

17

rule regarding the medical opinions of treating physicians contained in 20 CFR § 404.1527(c)(2).

Here, the ALJ evaluated the medical evidence and hearing testimony, and provided sufficient explanation for his implicit rejection of Dr. Dankoff's opinion regarding Saulic's expected work absences.  As noted above, the ALJ recounted both the medical and opinion evidence regarding Saulic's numerous surgeries, emergency room visits, and treatment with pain medication.  (Tr. 18.)  Citing evidence indicating Saulic was "repeatedly assessed as stable" between exacerbations of her condition, the ALJ determined that an off task restriction of 10% (i.e. twenty four days per year, or two days per month) adequately allowed for her impairment. Moreover, he fully explained that he arrived at this restriction by calculating the number of absences per year that would have resulted from Saulic's outpatient surgeries and ER visits (i.e. six days in 2008, six days in 2009, and eight days in 2010) and then added in a "comfortable margin of error" to allow for Saulic's complaints of pain.  Saulic has not cited any specific medical evidence indicating that the ALJ's calculations are unreasonable.

In light of the above, the Court finds the ALJ sufficiently explained the basis for his implicit rejection of Dr. Dankoff's opinion regarding Saulic's expected work absences.  Saulic's first assignment of error is without merit.

### Credibility

Saulic argues the ALJ erred in finding her to be less than fully credible.  She argues the ALJ placed improper emphasis on her ability to hold part-time employment, perform some limited daily activities, and, history of "avoid[ing] the hospital" when experiencing pain from her kidney stones.  Saulic also argues that, while medical treatment and pain medications have helped treat her symptoms, they have only provided "short-term relief."  (Doc. No. 15 at 16-20.)

It is well settled that pain alone, if caused by a medical impairment, may be severe enough

to constitute a disability.  *See Kirk v. Sec' of Health and Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  When a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating these symptoms.  First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment.  Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms."  SSR 96-7p.  Essentially, the same test applies where the alleged symptom is pain, as the Commissioner must (1) examine whether the objective medical evidence supports a finding of an underlying medical condition, and (2) whether the objective medical evidence confirms the alleged severity of pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.  *See Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994).

If these claims are not substantiated by the medical record, the ALJ must make a credibility determination of the individual's statements based on the entire case record.  *Id*.  Credibility determinations regarding a claimant's subjective complaints rest with the ALJ.  *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).  The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly.  *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).  Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individuals statements and the reason for the weight."  SSR 96-7p, Purpose section; *see also Felisky,* 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so").  To determine credibility, the ALJ must look to medical evidence, statements by the claimant,

19

other information provided by medical sources, and any other relevant evidence on the record. *See* SSR 96–7p, Purpose. Beyond medical evidence, there are seven factors that the ALJ should consider.[7] The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence. *See Cross,* 373 F.Supp.2d at 733; *Masch v. Barnhart*, 406 F.Supp.2d 1038, 1046 (E.D. Wis. 2005).

Here, the ALJ found that, while Saulic's recurrent kidney stones could reasonably be expected to cause her pain, Saulic's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible. (Tr. 18.) In support of this conclusion, the ALJ noted that Saulic's surgeries were "generally successful in relieving the symptoms" and she "has been repeatedly assessed as stable" in between exacerbations of her symptoms. (Tr. 18.) He also found that Saulic's treatment with pain medications had been partially effective and that her follow-up visits with her treating physician had been "consistently normal." (Tr. 18.) The ALJ then explained as follows:

> The record reflects ten visits to emergency rooms for acute flare ups of pain associated with this impairment between August of 2008 and July of 2010 (1F/157, 108, 94, 77, 55, 38), (6F/51), (5F/102, 74, 3); however, on two of these occasions, the visit was prompted because the claimant had run out of medications (1F/55, 38); on two occasions, the claimant refused a suggested admission to the hospital (1F/55, 38) and on two separate occasions, the

---

[7] The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96–7p, Introduction; *see also Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 732-733 (N.D. Ohio 2005) (stating that an ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.")

claimant left the emergency room against medical advice (6F/51), (5F/74). The record reflects no surgeries since September of 2010 and no emergency room visits since July of 2010.

* * *

At one point or another in the record (either in forms completed in connection with the application and appeal, in medical reports or records, or in the claimant's testimony), the claimant has reported the following daily activities: the ability to attend to her own personal hygiene and grooming, the ability to maintain a driver's license, the ability to perform household chores and prepare meals, the ability to shop in stores, follow a recipe, watch television and remember what she has seen (4E), (hearing testimony).  In short, the claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. While none of these activities, considered alone, would warrant or direct a finding of not disabled, when considered in combination, they strongly suggest that the claimant would be capable of performing the work activity inherent in the residual functional capacity.

The claimant has made inconsistent statements on issues relevant to the disposition of this claim.  At the hearing, the claimant testified that she could not complete a home schooling program or seek her general equivalency degree due to pain and complications from her condition (hearing testimony). However, the record reflects that the claimant maintained a fourteen-hour workweek on a regular and consistent basis for four years (3E).  Likewise, at the initial interview for this claim, the field office interviewer reported that the claimant offered conflicting information at times (1E/2).  Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant may not be entirely reliable.

(Tr. 19.)

The Court finds the ALJ did not improperly assess Saulic's credibility.  As set forth *supra*, the ALJ fully considered the medical evidence and hearing testimony, including evidence regarding Saulic's surgeries, emergency room visits, and pain symptoms and treatment.  The decision provides a number of specific reasons for finding Saulic to be less than fully credible, including her successful surgical treatments; stability between exacerbations; the nature and degree of her daily activities; and, her ability to maintain part-time employment on a regular and

consistent basis for four years.  (Tr. 18-19.)  Moreover, in reaching his credibility determination, the ALJ considered virtually all of the factors set forth in SSR 96-7p, including Saulic's testimony regarding her daily activities; the frequency and intensity of her pain; the effectiveness and side effects of Saulic's pain medication; and, other measures used by Saulic to relieve her symptoms.  (Tr. 18-19.)

Saulic urges the Court to find that the reasons given by the ALJ do not demonstrate a lack of credibility.  However, it is not this Court's role to "reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."  *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)).  *See also Vance v. Comm'r of Soc. Sec.*, 2008 WL 162942 at * 6 (6th Cir. Jan. 15, 2008) (stating that "it squarely is *not* the duty of the district court, nor this court, to re-weigh the evidence, resolve material conflicts in testimony, or assess credibility.")  The ALJ provided sufficiently specific reasons for his credibility determination and supported those reasons with reference to specific evidence in the record.  Saulic's second assignment of error is without merit.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner to be supported by substantial evidence.  Accordingly, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: September 16, 2013